**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **LAWRENCE CRISCIONE,** | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | **Case No.: PWG 19-cv-2087** |
| **U.S. NUCLEAR REGULATORY COMMISSION,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Plaintiff Lawrence Criscione sued his employer, the United States Nuclear Regulatory Commission ("NRC") alleging whistleblower retaliation in violation of Section 211 of the Energy Reorganization Act, as amended by the Energy Policy Act of 2005, Pub. L. 109-58, August 8, 2005 ("ERA"), codified at 42 U.S.C. § 5851. First Am. Compl., ECF No. 29. Mr. Criscione alleges that he disclosed serious nuclear safety concerns to the NRC, the Office of the Inspector General ("OIG") of the NRC, Congress, and the public, and the NRC responded by discriminating against him with respect to his compensation and terms of employment. *Id.* The NRC filed the pending motion to dismiss, asserting that the ERA contains no waiver of United States sovereign immunity with regard to claims brought against the NRC for the complained-of retaliation, so the complaint must be dismissed for lack of subject matter jurisdiction. Mot. Mem. 11, ECF No. 22-1. The NRC also argues that certain claims in both counts of Mr. Criscione's two-count complaint are time-barred, he failed to exhaust administrative remedies, and his claims are not plausible. *Id.*

at 17-20. I have reviewed all the filings, ECF Nos. 22, 30, 31, and attached exhibits,[1] and find that a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). Because I find that there is no unequivocal waiver of sovereign immunity, I shall GRANT Defendant's motion to dismiss for lack of subject matter jurisdiction and DISMISS the Complaint without prejudice. In light of this ruling, there is no need to consider the Defendant's alternative grounds for dismissal.

## BACKGROUND[2]

According to its website, the NRC was created "to ensure the safe use of radioactive materials for beneficial civilian purposes while protecting people and the environment [and it therefore] regulates commercial nuclear power plants and other uses of nuclear materials, such as in nuclear medicine, through licensing, inspection and enforcement of its requirements." First Am. Compl. ¶ 13. Mr. Criscione has worked for the NRC since October 26, 2009 as a Reliability and Risk Engineer in the Division of Risk Assessment of the Office of Nuclear Regulatory Research.[3] *Id.* at ¶ 10. Before that, he worked as a Plant Shift Engineer for Ameren Corporation at the Callaway nuclear generating station ("Callaway Plant"). *Id.* at ¶ 14.

While at the Callaway Plant, Mr. Criscione evaluated a safety-related failure that had occurred in 2003 and discovered abnormalities that called into question the competency and integrity of the NRC-licensed operators. *Id.* at ¶¶ 33-36. Mr. Criscione documented and disclosed the irregularities to Ameren managers but was dissatisfied with the lack of response. *Id.* at ¶¶ 39-

---

[1] As discussed below, I reviewed the following exhibits attached to Defendant's motion: Ex. 2, Dep't of Labor Secretary's Findings in Nuclear Regulatory Commission/Criscione/3-0050-14-115 (ECF No. 22-4); Ex. 4, 06/13/18 Dep't of Labor Office of Administrative Law Judges Order Dismissing Complaint in *Criscione v. NRC*, OALJ Case No. 2017-ERA-00009 (ECF No. 22-6); Ex. 6, 03/22/19 Dep't of Labor Administrative Review Board Order Dismissing Complaint in *Criscione v. NRC*, OALJ Case No. 2017-ERA-00009 (ECF No. 22-8).
[2] For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in his Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).
[3] His employment grade is GS-14. First Am. Compl. ¶ 10.

2

41, 47-49.  Later, between 2010-2012, after moving to the NRC, he submitted citizen petitions regarding the incident, formally protested in a "Non-Concurrence form," initiated meetings with NRC officials, provided information to public news and journals, and in August 2012, he described the incident in an email to the NRC Chairman and other officials.  *Id.* at ¶¶ 37-38, 50-56.  Mr. Criscione alleges that Ameren's legal counsel sent a letter to NRC in January 2011 to confirm an understanding that Mr. Criscione's official duties would not involve any matters related to Callaway.  *Id.* at ¶ 57.  Mr. Criscione alleges that such an understanding between his prior and current employer constitutes an adverse and discriminatory employment action because it reflects a reduction of his responsibilities.  *Id.*  Mr. Criscione also alleges that his NRC supervisor directed him to not pursue further regulatory actions related to Callaway, and he received performance counseling for being disrespectful and nonprofessional in connection with his disclosures.  *Id.* at ¶ 58.

In September 2012, Mr. Criscione also submitted a disclosure letter to the NRC Chairman—and distributed it throughout the NRC and to the Office of Special Counsel and to two dozen members of Congress—about a serious failure by NRC management to follow through on corrective action against a serious safety vulnerability at the Oconee nuclear power plant in South Carolina.  *Id.* at ¶¶ 60, 69-70.  Mr. Criscione alleges that he was given a written reprimand for not marking his disclosure letter "For Official Use Only," which constitutes an adverse and discriminatory employment action because it had negative effects on his promotability.  *Id.* at ¶ 72.  He also alleges that he was directed to not contact Congress directly again, and he became the subject of a criminal investigation by the Office of the Inspector General.  *Id.* at ¶¶ 74-77.  Mr. Criscione's November 2013 performance appraisal criticized him for failing to be professional and respectful, but when he objected, the comments were removed.  *Id.* at ¶ 78.  However, the NRC's

Deputy Division Director ordered Mr. Criscione to make no further statements, which he interpreted to be a "gag order." *Id.*

Frustrated with his experience as a GS-14 at NRC headquarters, Mr. Criscione applied for a lower-paid (GS-13) inspector positions in late 2013, believing they would offer better job satisfaction and more opportunity for long-term career growth. *Id.* at ¶¶ 79-80.  The transfers were denied, which Mr. Criscione interpreted as adverse employment actions. *Id.*  In March 2014, Mr. Criscione applied for an Operations Engineer position at the regional headquarters in Illinois. *Id.* at ¶ 82.  Although his application was referred to the Selecting Official, he was not interviewed, so he filed a union grievance against the agency. *Id.*

Mr. Criscione filed his complaint with the Department of Labor, Occupational Safety and Health Administration ("OSHA") on May 20, 2014. *Id.* at ¶ 16.  OSHA dismissed the complaint on May 26, 2017. *Id.*[4]  Mr. Criscione objected to the findings and requested a hearing, and on June 13, 2018, the Administrative Law Judge ("ALJ") dismissed Mr. Criscione's complaint on summary decision finding that it lacked subject matter jurisdiction. *Id.*[5]  He then filed a petition for review with the Administrative Review Board ("ARB") on June 22, 2018. *Id.*  Not yet having received a final decision, on March 7, 2019, Mr. Criscione filed a notice stating his intention to file this lawsuit. *Id.*  The ARB dismissed his complaint on March 22, 2019 so Mr. Criscione could pursue his case in federal court. *Id.*[6]

---

[4]   *See also* Def.'s Ex. 2, Dep't of Labor Secretary's Findings in Nuclear Regulatory Commission/Criscione/3-0050-14-115 (ECF No. 22-4).
[5]   *See also* Def.'s Ex. 4, 06/13/18 Dep't of Labor Office of Administrative Law Judges Order Dismissing Complaint in *Criscione v. NRC*, OALJ Case No. 2017-ERA-00009 (ECF No. 22-6).
[6]   *See also* Def.'s Ex. 6, 03/22/19 DOL Administrative Review Board Order Dismissing Complaint in *Criscione v. NRC*, OALJ Case No. 2017-ERA-00009 (ECF No. 22-8).

Mr. Criscione alleges that he did not receive vindication through collective bargaining arbitration because the NRC awarded him a Priority Consideration while still refusing to admit that it had neglected to follow its hiring practices. *Id.* at ¶ 82. Since being awarded the Priority Consideration, Mr. Criscione has been offered GS-13 positions, but he now believes that if he takes the demotion, he will never get fair consideration for future promotion back to GS-14. *Id.* at ¶ 84.[7]

Mr. Criscione filed his Complaint in this Court against the NRC on July 16, 2019, and his First Amended Complaint on January 15, 2020. He alleges two causes of action in his Complaint: (1) Count I – Violation of Mr. Criscione's Rights under the Energy Reorganization Act; and (2) Count II – Violation of Mr. Criscione's Right to Petition Congress. *Id.* at ¶¶ 85-98A. He seeks an injunction directing the Defendant to select him for an Operations Engineer position at a GS-14 pay grade in NRC Region III, headquartered in Lisle, Illinois; an injunction removing all restraints on his communications; expungement of negative comments and references in his personnel file and the OIG investigation file; an injunctive order for a letter to be issued acknowledging that the agency should not have placed him under criminal investigation and that he had not engaged in any misconduct, as well as a commendation for his disclosures and their contribution to nuclear safety; and economic and non-economic damages, including costs and fees. *Id.* at ¶ 99.

The NRC filed the pending motion to dismiss Mr. Criscione's complaint for lack of jurisdiction, or alternately for summary judgment on both counts. Mot., ECF No. 22.

---

[7] Mr. Criscione also alleges that the pattern of retaliation continued, and he provides examples of various applications for Operations Engineer positions. For example, Mr. Criscione applied for an Operations Engineer position at NRC Region III in February 2015, but he alleges that the posting was withdrawn when his application was received. *Id.* at ¶ 83. In 2017, he was not selected for a position as a Headquarters Emergency Response Officer even though he had more experience that the candidates chosen for the position. *Id.* at ¶ 84A. Mr. Criscione believes that he was not chosen because of his history of protected disclosures. *Id.* He provides additional examples from April 2018 and March 2019. *Id.* at ¶ 84B.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a plaintiff's complaint due to lack of subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). "Jurisdiction of the lower federal courts is . . . limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Because subject matter jurisdiction involves the court's power to hear a case, it cannot be waived or forfeited, and courts have an independent obligation to ensure that subject matter jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The burden of establishing subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

When a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting a facial challenge that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as Defendant does here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that, on a motion to dismiss, a plaintiff's pleading of the elements of standing are "presum[ed] [to] embrace those specific facts that are necessary to support the claim" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))).

Pursuant to Rule 12(b)(6), a plaintiff's claims are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Whether considering a Rule 12(b)(1) factual challenge or a Rule 12(b)(6) motion, the Court may take judicial notice of "fact[s] that [are] not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Additionally, the Court may "consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) ("The court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see*

*Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). As identified, the exhibits I have considered—Department of Labor rulings—were attached to the Defendant's motion, are relied upon and integral to the Plaintiff's Complaint, and they are also subject to judicial notice.

## DISCUSSION

The Plaintiff asserts that this Court has jurisdiction over this action pursuant to 42 U.S.C. § 5851(b)(4) and 28 U.S.C. § 1331. The NRC asserts that Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction because the ERA does not contain a waiver of United States sovereign immunity with regard to claims brought against the NRC for the complained-of retaliation. Mot. Mem. 11.

"As a sovereign the United States 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)); *see also Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (noting the limits of federal jurisdiction). Sovereign immunity also applies to agencies and instrumentalities of a State, such as the NRC. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). The defendant bears the burden of demonstrating sovereign immunity, which is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). It "deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info.*

*Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

For a claim to be brought against the United States, there must be an explicit waiver of sovereign immunity. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981); *Testan*, 424 U.S. at 399. And the waiver must be established by the statute itself. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text: 'the "unequivocal expression" of elimination of sovereign immunity that we insist upon is an expression in statutory text.'")(quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992))). The Supreme Court's "clear statement" approach requires courts to strictly construe the text in favor of the sovereign in the absence of a clear statement from the United States waiving sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 290 (2011); *McMellon v. United States*, 387 F.3d 329, 340 (4th Cir. 2004). However, Congress is not required to "make its clear statement in a single section or in statutory provisions enacted at the same time." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000).

The NRC is a federal regulatory agency established by the Energy Reorganization Act of 1974, which includes protections for employees who raise nuclear safety concerns. Specifically, 42 U.S.C. § 5851 (a)(1) states:

> No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)--
>
> (A) notified his employer of an alleged violation of this chapter or the Atomic Energy Act of 1954 (42 U.S.C. 2011 et seq.);
>
> (B) refused to engage in any practice made unlawful by this chapter or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer;

9

> (C) testified before Congress or at any Federal or State proceeding regarding any provision (or proposed provision) of this chapter or the Atomic Energy Act of 1954; . . . .

The term "employer" is then defined, which includes the NRC, and the text continues in subsection (b) to describe the action an employee may take:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, within 180 days after such violation occurs, file (or have any person file on his behalf) a complaint with the Secretary of Labor (in this section referred to as the "Secretary") alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint, the Commission, and the Department of Energy. . . .

The text continues to describe in more detail the steps that are taken to investigate and resolve a complaint, including the circumstances under which a complaint may be filed with a United States District Court. *Id.* at § 5851(b). The purpose of such a whistle-blower provision is to "to promote a working environment in which employees are relatively free from the debilitating threat of employment reprisals for publicly asserting company violations of statutes protecting the environment." *Trimmer v. United States Dep't of Labor*, 174 F.3d 1098, 1104 (19th Cir. 1999) (quoting *Passaic Valley Sewerage Comm'rs v. Dep't of Labor*, 992 F.2d 474, 478 (3d Cir.1993)). As an example, if Mr. Criscione had gone public with his concerns while working as a Plant Shift Engineer for Ameren Corporation at the Callaway Plant, and was discriminated against by Ameren as a result of his whistle-blowing, this provision could provide a remedy.

However, Mr. Criscione is complaining about discrimination by his current employer, a federal agency, and the agency claims it has not waived sovereign immunity under this provision. I have found no federal court decision squarely ruling on whether the NRC has waived sovereign

10

immunity. The plain language in Subsection (b) states "discriminated against by any *person*," and the term "person" is not defined in the Act. § 5851(b) (emphasis added).

Mr. Criscione's complaint was first reviewed and dismissed by the Secretary of the Department of Labor, finding that the NRC is "not a covered employer" within the meaning of 42 U.S.C. § 5851, "as sovereign immunity applies." Mot. Ex. 2, ECF No. 22-4. Mr. Criscione then requested a hearing by an ALJ, followed by a review by the ARB. The ALJ dismissed the complaint, noting that he was bound by ARB precedent, which held "that Congress has not unequivocally waived sovereign immunity under the ERA." Mot. Ex. 4, ECF No. 22-6.[8]

ARB precedent on this question can be found in *Mull v. Salisbury Veterans Admin. Med. Ctr.*, ARB Case No. 09-107, 2011 WL 4343277 (Aug. 31, 2011). In *Mull*, the ARB specifically analyzed § 5851 to determine whether the federal government waived its sovereign immunity under the ERA. *Id.* It distinguished between the language "employer" in the first section providing the anti-retaliation provision from the language "person" in the second section providing the remedy. *Id.* at *5-6. The ARB stated: "After analyzing the ERA, we conclude that it does not contain any language that expresses congressional intent to waive the federal government's sovereign immunity. Certainly, it is self-evident that there is no statement that 'federal sovereign immunity' is waived." *Id.* at *7. The ARB noted that the remedy provision applied to "any person" but "person" is not defined. *Id.* at *8. In comparison, the Clean Air Act, 42 U.S.C § 7622, which also uses the term "person" but specifically "defined it to include 'any agency, department, or instrumentality of the United States,' thereby unequivocally expressing the intent to waive the federal government's sovereign immunity." *Id.* The ARB concluded that there was no waiver of

---

[8] Because no final decision was issued within one year after the filing of the complaint, Mr. Criscione filed a notice stating his intention to file an action in federal district court, so the ARB dismissed the complaint without issuing a ruling. Mot. Ex. 6, ECF No. 22-8.

sovereign immunity in the ERA because the "lack of any language including the federal government as an entity against which complaints can be filed or otherwise waiving its sovereign immunity, tends to suggest that Congress did not intend the federal government's sovereign immunity to be waived." *Id.* I find the ARB's analysis persuasive. Importantly, when Congress amended the definition of employer to include the NRC, it was aware of the ARB's earlier decision similarly interpreting the absence of a definition of "person," but it did not additionally amend the definition of person to include the federal government. *Id.* at *9, n.5 (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change")).

Also instructive is Judge Russell's analysis of the language in the Fair Credit Reporting Act ("FCRA"), which was also centered on the meaning of the word "person." *Robinson v. Pennsylvania Higher Education Assistance Agency*, Case No.: GJH-15-0079, 2017 WL 1277429, at *2-4 (D. Md. Apr. 3, 2017). Although there was a definition of person in the Act, it was not clear whether the federal government is a "person" for purposes of the general liability provisions. *Id.* Judge Russell recognized that "Congress is well-equipped and able to construct statutory language waiving sovereign immunity, and it has done so in other instances." *Id.* at *3 (citing the Federal Tort Claims Act and the Tucker Act as examples). Judge Russell concluded that the FCRA provisions do not contain a clear and unequivocal waiver of sovereign immunity. *Id.* at *4. The Fourth Circuit affirmed, concluding that "person" does not include the federal government or its agencies, noting that "[t]here is a 'longstanding interpretive presumption that "person" does not include the sovereign.'" *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000)).

Mr. Criscione cites *FAA v. Cooper*, 566 U.S. 284, 291 (2012) to note that "the Supreme Court 'ha[s] never required that Congress use magic words' of any kind to waive sovereign immunity." Resp. 13. The Fourth Circuit also cited this language in *Robinson*, adding "[b]ut courts are to 'presume congressional familiarity' with the need for waivers of sovereign immunity to be unambiguous and unequivocal." 917 F.3d at 804. Mr. Criscione adds that he "'need not cite to "an express contrary definition,"' of a term a defendant contends defeats waiver; instead the proponent of waiver need only 'point to some indication in the text or context of the statute that affirmatively shows Congress intended to include the Government' among the entities to which waiver applies." Resp. 13 (quoting *Return Mail, Inc. v. United States Postal Service*, 587 U.S. ----, 139 S. Ct. 1853, 1863 (2019)). In *Return Mail*, the Supreme Court considered whether the Postal Service, a federal agency, was a "person" eligible to seek patent review, focusing on the patent-review statute's specific remedies' language. 139 S. Ct. at 1861-62. It proceeded from "a 'longstanding interpretive presumption that 'person' does not include the sovereign,' and thus excludes a federal agency," and ultimately found none of the Postal Service's arguments for displacing the presumption sufficient to overcome it. 139 S. Ct at 1861-63. The Court ultimately reinforced the general rule that the Government is presumptively *not* a "person" for purposes of federal statutes. *See id.* at 1862 ("Thus, although the presumption is not a "hard and fast rule of exclusion, it may be disregarded only upon some affirmative showing of statutory intent to the contrary." (citation omitted)).[9]

Finally, Mr. Criscione argues that different immunity provisions may be tested under disparate levels of scrutiny and suggests that secondary provisions, such as a remedy provision,

---

9   I note that *Return Mail* further illustrates that Congress knows how to abrogate sovereign immunity expressly. *See* 139 S. Ct. at 1863 n.3.

13

must be tested under a less stringent "fair interpretation"/"fair inference" standard. Resp. 14-15 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003)).  In *White Mountain*, the Supreme Court allowed the White Mountain Apache Tribe's claim for breach of trust to proceed against the United States, holding that the language of the Act went "beyond a bare trust and permit[ted] *a fair inference* that the Government is subject to duties as a trustee." 537 U.S. at 468-69, 474 (emphasis added).  The case establishes guidelines by which a court determines whether a statute or regulation creates a trust relationship, but it does not refute the requirement for an express waiver of sovereign immunity.  The Court explained that although the waiver of sovereign immunity must be unequivocal (and the Act at issue contained such a waiver), the language mandating a right of recovery in damages may be implied, stating that the "fair interpretation rule demands a showing *demonstrably lower* than the standard for the initial waiver of sovereign immunity." *Id.* at 472-73.  Here, the ERA does not contain an explicit waiver of sovereign immunity such as existed in *White Mountain*.

Therefore, recognizing that waivers are not to be implied, and ambiguities are to be resolved in favor of the Government, I conclude that there is no clear unequivocal waiver of sovereign immunity present in the ERA's whistleblower provisions, and this Court does not have subject matter jurisdiction over Mr. Criscione's claims.  I shall GRANT Defendant's motion to dismiss for lack of subject matter jurisdiction.  Because I find in favor of the Defendant, I will not reach the alternative arguments raised in the motion.

**ORDER**

For the reasons stated in this Memorandum and Order, it is this 6th day of October 2020, hereby ORDERED that:

1. Defendant's Motion to Dismiss, ECF No. 22, is GRANTED;

2. Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE;

3. The CLERK is directed to CLOSE this case.

/S/<br>
Paul W. Grimm<br>
United States District Judge